IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARLO E. CEROME,
    Plaintiff
    v.
MOSHANNON VALLEY CORRECTIONAL
CENTER, et al.,
    Defendants

Case No. 3:07-cv-77-KRG-KAP

Report and Recommendation

Recommendation

The defendants' motion to dismiss, docket no. 23, should be granted for lack of exhaustion of administrative remedies[1].

Report

Of course, since this is a motion for judgment on the pleadings (with respect to the exhaustion defense) and a motion to dismiss the complaint, I assume the truth of the well pleaded allegations of fact in the complaint. I need not, however, accept the legal conclusions asserted by plaintiff.

The Moshannon Valley Correctional Center is a prison operating under a contract with the Bureau of Prisons. Plaintiff alleges that defendants allowed the majority Hispanic prisoners, mostly Spanish speaking aliens, to intimidate the minority black prisoners, mostly American citizens serving sentences imposed in the District of Columbia. On February 5, 2007, open violence broke

---

1. Cornell Companies should be dismissed as a defendant for the additional reason that the Supreme Court has held that federal courts are not authorized to create federal common law actions against private entities acting under color of federal law. Correctional Service Corp. v. Malesko, 534 U.S. 61 (2001).

out the morning after a Hispanic prisoner disputed a call made by a black inmate referee in a basketball game. Several black inmates were seriously injured. That night (at about 4:00 a.m. on February 6, 2007), plaintiff awoke to find a Hispanic inmate near his bed. The inmate apparently had been brought to plaintiff's section of the prison by a corrections officer in order to identify some of the black inmates in the fight. Plaintiff feared that the Hispanic inmate might kill him. As a result plaintiff variously alleges he had a heart attack or a mild stroke. At about lunchtime that day violence broke out again, and plaintiff, already suffering from numbness and diarrhea and recovering from a stroke suffered in November 2006, began throwing up blood, and was treated in the medical unit. The rest of the month, plaintiff lived a different section of the prison. On February 28, 2007, plaintiff requested to be placed in protective custody, and when he was placed in protective custody corrections officers strip searched him, recording the search on videotape[2].

I

Prison inmates have a constitutional right that prison officials not be deliberately indifferent to their safety or to any other basic human need, including their need to be protected from

---

2. Plaintiff asserts a separate claim for this conduct which he bases on 18 U.S.C. § 1801. That criminal statute does not provide plaintiff with a private right of a civil action. Nor does the practice of strip searching inmates or recording that strip search violate any right of an inmate.

other inmates. See Day v. Federal Bureau of Prisons, 233 Fed.Appx. 132, 133 (3d Cir.2007). The Supreme Court has defined deliberate indifference:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). A defendant's deliberate indifference can be alleged by alleging circumstantial evidence sufficient to permit the conclusion that the defendant consciously disregarded a serious risk to an inmate. Woloszyn v. County of Lawrence, 396 F.3d 314, 321 (3d Cir.2005)(citations omitted). Woloszyn affirmed the grant of summary judgment to corrections personnel at the Lawrence County Prison who allowed a pretrial detainee to commit suicide by hanging himself approximately ninety minutes after arriving at the prison. According to the appellate court, the lack of evidence that Woloszyn was a particular risk for suicide meant that defendants could not have been on notice that Woloszyn faced a substantial risk of serious harm. A fortiori, the individual defendants could not be deliberately indifferent to that risk.

Mere negligence - that is, that defendants should have been on notice of a serious risk - is not enough. Even a gross

error of judgment does not equal deliberate indifference[3]: Farmer, 511 U.S. at 843 n.8.

Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.1997), is one of the earliest post-Farmer cases in this circuit on the duty of prison personnel to protect inmates from assaults by fellow prisoners. Hamilton, an inmate with a long history of being assaulted by fellow prisoners because he was perceived as an informant, was attacked at a Delaware prison while in the general population, two months after the multidisciplinary team (MDT) recommended he be placed in protective custody. The district court granted summary judgment on Hamilton's failure to protect claim; the court of appeals reversed.

Defendant Lewis, the head of the classification committee (CICC) which was a level above the MDT, denied the request for protective custody, for the stated reason that "there was no evidence of a problem" in the prison. The appellate court found that the existence of a material fact on the issue of substantial risk of serious harm was demonstrated by the fact that the MDT had

---

3. See Farmer, 511 U.S. at 844: [I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, **or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent**. (my emphasis).

4

made a not "unwarranted or one-sided" recommendation for protective custody. 117 F.3d at 747. The panel concluded there was a material issue of fact as to defendant Lewis' deliberate indifference, because Lewis could be charged with the knowledge of Hamilton's long history of being at risk for assaults as a result of being branded a snitch, and nevertheless decided not to place him in protective custody. The panel characterized that as a "decision to consciously disregard that risk." 117 F.3d at 748.

The members of the MDT were granted summary judgment by the district court on the basis that they had made the recommendation of protective custody (which in hindsight was the proper decision) and could not, once that course of action was rejected by the CICC, <u>sua sponte</u>, place Hamilton in protective custody. The circuit reversed on the grounds that the MDT could have taken some "additional steps," after its recommendation was rejected, such as placing Hamilton in administrative segregation, and that the MDT's failure to do so "could be viewed by a factfinder as the sort of deliberate indifference to inmate safety" that would allow the imposition of liability on the MDT members. 117 F.3d at 749.

In <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 123 (3d Cir.2001), the Court of Appeals addressed the deliberate indifference of supervisory personnel in prison for assaults by a subordinate. Plaintiffs Tate and Beers-Capitol, two juvenile

5

female inmates at a juvenile detention center in New Castle, Pennsylvania, proved at trial that they had been sexually exploited by Whetzel, a male corrections officer. They appealed the trial court's earlier grant of summary judgment to all the supervisory personnel at the juvenile detention center. The Court of Appeals affirmed the grant of summary judgment to almost all of the supervisory officials, holding that plaintiffs' evidence of the general risk of sexual assault was not sufficient circumstantial evidence to create a trial issue that prison officials must have known of the risk that Whetzel would assault Beers-Capitol. The appellate panel further held that the subsequent accusation that Whetzel had molested Beers-Capitol (and other inmates) was insufficient to put most of the supervisory defendants on notice that Whetzel posed a risk to Tate. The panel reversed the grant of summary judgment to one supervisory defendant, Nora Burley, who allegedly admitted to Tate she "kind of knew" of Whetzel's pattern of improper sexual contact with inmates. 256 F.3d 141-42.

Most recently, in Day v. Federal Bureau of Prisons, the Third Circuit affirmed the dismissal of the claim of an inmate that prison officials were deliberately indifferent to the prospect that he would be assaulted. While something less than allegations of a reign of terror will do, Day v. Federal Bureau of Prisons, 233 Fed.Appx. at 134, citing Riley v. Jeffes, 777 Fed.2d 143, 147 (3d Cir.1985), Day's lack of allegation that defendants were aware of

any "specific threat of harm against him" doomed plaintiff's claim since prison officials could not be deliberately indifferent to something they were not aware existed.

The complaint in this matter is more like <u>Day v. Federal Bureau of Prisons</u> than <u>Hamilton v. Leavy</u> or <u>Beers-Capitol v. Whetzel</u>. Plaintiff relies on the general problem of intra-prison racial animosity, and the particular episode of violence at Moshannon Valley, for the inference that defendants knew – should have known is not enough – that plaintiff would suffer what he variously describes as a heart attack or stroke due to awakening to find a Hispanic inmate near his bed at night. A different claim would be presented if a fellow inmate brought to plaintiff's bedside had assaulted plaintiff: defendants have a duty to protect plaintiff from such assaults. Defendants[4] do not, however, bear the burden of anticipating plaintiff's fears.

II

In any case, plaintiff cannot file a complaint because he did not first exhaust his administrative remedies. The Prison Litigation Reform Act of 1996 amended 42 U.S.C.§ 1997e(a) to state:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

4. For purposes of this motion it is not necessary to address to what extent <u>Correctional Service Corp. v. Malesko</u>, 534 U.S. 61 (2001) acts as a bar to a claim against the individual defendants.

Actual knowledge by the defendants of plaintiff's claim is irrelevant: a prisoner must exhaust administrative remedies by complying to the extent feasible with the prison's administrative regulations governing inmate grievances: substantial compliance with existing remedies is sufficient. Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir.2000). However, failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir.2004).

Exhaustion is not a trial issue, rather it is a preliminary question of law to be determined by the court. See Spruill v. Gillis, 372 F.3d at 226, citing Concepcion v. Morton, 306 F.3d 1347, 1352 (3d Cir.2002). The defendants bear the burden of pleading and proving that plaintiff did not exhaust the remedial system. Jones v. Bock, 549 U.S. 199, 216 (2007); Brown v. Croak, 312 F.3d 109, 111-12 (3d Cir.2002). Where the prisoner alleges that he did not exhaust the administrative grievance system because it was futile due to interference by the prison administration, see Turner v. Burnside, 541 F.3d 1077 (11th Cir.2008), he bears the burden of proving that interference.

Plaintiff submitted an Inmate Informal Resolution Form on February 28, 2007, which is difficult to read in scanned form but which says in full:

By this request I respectfully pray your authority to transfer me to another institution where I can feel secured. As you know, mexican inmates vow to kill black inmates because of the color of their skin. The institution is also aware that mexican inmates could do anything against the blacks because they want more prison time. not only disturb the functionment of the institution. I feel threatened also by some staff members who play a major role in the last event.
     Respectfully submitted   2/08/07.

The other submission by plaintiff was an Inmate Request to Staff Member dated April 17, 2007, which asked:

Would you please allow me 2 or 3 minutes of your time. I really want to talk with you about my situation now.

Plaintiff did not by these two requests make any kind of complaint that defendants had caused his stroke or heart attack by allowing a Hispanic inmate near his bed while he was sleeping. Nor did they alert prison officials in any way to plaintiff's complaints about the treatment he received in protective custody.

Plaintiff alleges that he was in fear of retaliation from defendants and so did not even make a copy of his complaint before filing it, and that excuses further compliance with any administrative remedial procedure. Further, plaintiff alleges that he advised the Warden at Moshannon Valley of his problems contemporaneously with the events described in his complaint, thus sufficiently exhausting his remedies. docket no. 26 at 10.

Plaintiff's arguments would read the administrative exhaustion requirement right out of the statute. Turner v. Burnside, which plaintiff cites, reversed the dismissal of a complaint for failure to exhaust under Section 1997e based on

9

specific allegations – the warden tore up the complaint and threatened to transfer the inmate away from his family – that court held would justify a reasonable person in concluding that the remedial system was in fact unavailable. 541 F.3d at 1081, 1083. In such case, the Eleventh Circuit held, the matter must be addressed at the summary judgment stage. 541 F.3d at 1082-83, 1086. Even accepting Turner v. Burnside as persuasive, I still must require more than plaintiff's conclusory allegation that he didn't use the grievance system because he felt intimidated.

The complaint must be dismissed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 5 March 2009

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Carlo E. Cerome, Reg. No. 62030-053
Northeast Ohio Correctional Facility
2240 Hubbard Road
Youngstown, OH 44505